## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

DANA PERKINS, #14059-026        :
                                   :

      Petitioner,            :
                                   :

v.                                :        **Civil No. 2:13cv114**
                                   :

ERIC WILSON,               :
Warden, FCI-Medium Petersburg,    :
                                   :

      Respondent.          :

### REPORT AND RECOMMENDATION

This matter was initiated by petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Perkins, an inmate in federal custody, challenges the result of a disciplinary hearing in which he was administratively sanctioned by the Federal Bureau of Prisons and lost good time credit. Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure, the matter was referred to the undersigned for a report and recommendation. Presently pending is Respondent's Motion to Dismiss or in the alternative Motion for Summary Judgment. (ECF Nos. 9, 10). Because the undisputed facts establish that Perkins cannot allege a claim which would entitle him to habeas relief, the undersigned recommends that Respondent's motion be GRANTED, and the petition be DISMISSED.[1]

### I.      STATEMENT OF THE CASE

Dana Perkins ("Petitioner" or "Perkins") is currently an inmate in federal custody serving

---

[1] Petitioner also filed a document styled, "Motion for Action Under Mandamus," alleging among other things, that "unknown persons conspired to obstruct [his] habeas corpus claim" by transferring his case from the Alexandria Division to the Norfolk Division and apparently misplacing his $5.00 filing fee in the process. (ECF No. 7 at 2). His initial payment appears to have been applied to the restitution owed as a result of his underlying conviction. A second payment in response to this Court's June 6, 2013 Order (ECF No. 5) was timely, and thus Perkins suffered no prejudice from the misdirected payment. To the extent Perkins claims any further mandamus relief, the undersigned recommends the Court deny his request.

the remainder of a 158-month term of imprisonment for Conspiracy to Manufacture and Distribute Methamphetamine. (ECF No. 10-1 at 2).[2] He was originally sentenced on March 8, 2005, and his projected release date is November 26, 2014. Id.

During his incarceration, Perkins has received three incident reports for violations of BOP conduct regulations, two of which resulted in the loss of good conduct time. Id. The BOP's prohibited acts are divided into four categories based on severity: Greatest (100 level); High (200 level); Moderate (300 level); and Low (400 level). Id. Offenses within the 100- and 200- levels are disposed of by the Discipline Hearing Officer ("DHO"), while 300- and 400-level offenses are handled by the Unit Discipline Committee ("UDC"). Id. at 2-3.

On January 26, 2011, while housed at the Federal Prison Camp in Terre Haute, Indiana ("Terre Haute"), BOP staff charged Perkins with incident report number 2117275, alleging violations of Code Section 297 – "[u]se of the telephone for abuses other than criminal activity (talking in code)." (ECF No. 1-2 at 3). On that date, a phone call between Perkins and a female friend, which occurred on January 25, 2011, was monitored by a BOP employee. Id. In relevant part, the conversation was as follows:

| | |
|---|---|
| Petitioner: | "[P]robably at 11:15 tomorrow." |
| Female: | "PP or FP?" |
| Petitioner: | "No, PC, did you hear me? I said PC, you lost me for a minute." |
| Female: | "[T]he PC I got was no good." |
| Petitioner: | "[Y]eah." |

Id. The monitoring employee determined that Perkins and the female voice were speaking in code, and charged him accordingly. Perkins received a copy of the incident report on January 27, 2011. Id.

Also on January 26, 2011, Perkins was charged with violations of Code Sections 305 and

---

[2] The factual summary is largely based upon the sworn affidavit of Cornelia J. Coll, a Paralegal Specialist employed by the BOP, submitted in support of Respondent's alternative Motion for Summary Judgment. (ECF No. 10-1). As set forth above, Ms. Coll's declaration has not been disputed by admissible evidence or sworn testimony.

329, "[p]ossession of anything not authorized for retention or receipt by the inmate" and "[d]estroying, altering or damaging government property, having a value of $100.00 or less," respectively. Id. at 2. On that date, Petitioner was working on an outside detail at Prairie Creek Park. (ECF No. 1-1 at 3). Upon his return to Terre Haute, two bags of tobacco were found in each of his government-issued jacket sleeves following a pat-down. Each sleeve had been cut around the shoulder seams. Id. Consequently, BOP staff filed incident report number 2117271, charging Perkins with the above-referenced violations of Code Sections 305 and 329. He was given a copy of the incident report on January 27, 2011. (ECF No. 1-2 at 2).

The jacket and tobacco violations were considered by Terre Haute's UDC on February 1, 2011 as they were 300-level offenses under BOP's categories. (ECF Nos. 10-1 at 4, 10-5). The talking in code violation could not be considered by the UDC as it was a 200-level offense, more appropriately considered by the DHO. (ECF No. 10-1 at 4). The UDC recommended sanctions on the 300-level violations but referred the matter to the DHO because "[b]ased on the seriousness of the offense[,] greater sanctions are needed than can be administered at the UDC level." Id. at 3. Petitioner was notified of the referral to the DHO on the same day, acknowledged his rights before the DHO, and requested a staff representative and the presence of one witness, Inmate Lippincourt. (ECF Nos. 10-6 at 2, 10-7 at 2). Perkins maintained he was not guilty of the offense because he did not know the tobacco was in the coat. (ECF No. 10-5 at 3).

An administrative hearing was held by the DHO on March 14, 2011 to consider both of the Incident Reports. (ECF Nos. 10-8, 10-9). Petitioner was present at this hearing, along with his staff representative from the BOP. Id. Regarding the telephone violation, the DHO determined the act was committed as charged. (ECF No. 10-8 at 2). Petitioner expressly stated

3

he understood his rights, requested no witnesses, and proffered no documentary evidence in support of his position on this charge. Id. Rather, he claimed no violation occurred, explaining he usually takes his lunch at 11:15, and the female friend was not speaking in code but "abbreviates in our calls," using "PP/FP as these are the parks initials I work at." Id. at 1.

In reaching his decision, the DHO considered Petitioner's phone record, and observed that he was found with tobacco on his person the day after the phone conversation took place. Absent any "credible defense to the charge," the DHO determined Perkins committed the violation and sanctioned him to 30 days loss of commissary and visiting privileges, 180 days loss of telephone privileges, disallowance of 27 days of good conduct time, and recommended transfer to another facility. Id. at 2. The DHO explained his reasoning as follows:

> Phone abuse creates monitoring issues and potential contraband drops for camp inmates. These actions cannot be tolerated in a correctional setting. Loss of commissary, telephone, visits, and recommendation for a transfer were imposed based on the seriousness of the incident and to try to deter future misconduct.

Id. Perkins was advised of these findings, as well as the evidence the DHO relied upon, and was notified of his right to appeal through the Administrative Remedy Program. Id. at 3.

With reference to Incident Report Number 2117271, charging the tobacco and jacket violations, the DHO determined the acts were also committed as charged. (ECF No. 10-9 at 2). The DHO relied on the same evidence in reaching his decision as it related to these charges, specifically referencing the fact that Perkins "and the female were talking in what was determined to be code and then the following afternoon [he] [was] found with tobacco on [his] person" after returning from work release. Id. at 3. He also relied on the reporting officer's statement describing the search of Perkins following his return from work release, as well as photographs of the recovered tobacco bags and coat. Id. The DHO ultimately determined that based on the evidence before him, it was incredible that Perkins did not know the tobacco was in

4

his coat's sleeves. Id.

Perkins, however, maintained his innocence, claiming he did not know the tobacco was in his coat and that "I have too much going on here to do this." Id. at 1. He requested three witnesses for the DHO Hearing, Inmate Lippincourt and two park employees, but none of these were called because the DHO determined their testimony was unnecessary. Specifically, the DHO explained his decision as follows:

> You wanted them to testify to [the effect] that you never left park service personnel all day. The DHO denied testimony from all three witnesses. It would have been highly unlikely for the park service employees to have had you under constant direct supervision all day of the incident and regardless, this incident involved possession of tobacco. There is no disputing that the tobacco was found on your person.

Id. at 2. For these violations, the DHO ultimately sanctioned Perkins to 30 days loss of commissary and visitation privileges, 180 days loss of telephone privileges, disallowance of 13 days good conduct time, and recommended transfer to another facility. Id. at 3. The DHO explained that these offenses cannot be tolerated in a correctional setting and the imposed sanctions "were imposed based on the seriousness of the incident and to try to deter future misconduct." Id. Petitioner was advised of these findings and of his right to appeal through the Administrative Remedy Program. Id.

Petitioner did appeal, in fact filing twenty-one administrative remedy requests through the BOP's Administrative Remedy Program. (ECF No. 10-1 at 7) (citing ECF No. 10-10). Many of Perkins' requests for administrative remedy related to the DHO hearing were rejected on a variety of procedural grounds. Id. Even so, it appears that Perkins has properly exhausted all administrative remedies related to the phone abuse violation in Incident Report Number 2117275. Id.

Concerning Report Number 2117271, regarding the jacket and tobacco, Petitioner

appealed the DHO's findings to the BOP's Northeast Regional Director via the Remedy Program on August 12, 2011. (ECF No. 10-11). Perkins' appeal was granted in part, and remanded to the DHO for re-hearing. (ECF No. 10-1 at 8). According to the Regional Director, a review of Perkins' appeal revealed "questions regarding procedural issues" that warranted remand. (ECF No. 1-3 at 2).

On August 14, 2012, the DHO at FCC Petersburg, where Perkins had been transferred, conducted the re-hearing. (ECF No. 10-1 at 9). Petitioner's previous staff representative, A. Adams from Terre Haute, submitted a written statement on his behalf. (ECF No. 10-15). Adams explained her attempts at locating the park employees assigned to supervise Perkins on January 26, 2011, indicating that each had been terminated and their personnel files were no longer available. Id. Consequently, despite further attempts at locating them through local phone books and internet searches, Adams was unable to contact or interview these individuals. Id.

For his part, Perkins acknowledged understanding his rights before the DHO and raised no issues or concerns with the disciplinary process to that point. (ECF No. 10-14 at 3). He maintained that he "had no knowledge of the tobacco, [and that] I did not have access to it. I was in the presence of park employees at all times." Id. Perkins requested testimony from Inmate Lippincourt who submitted a written statement corroborating Perkins' claims that he was never "outside the sight of any Vigo County employees." Id. Specifically, Lippincourt described the events of that day as follows:

> On the day that inmate Dana Perkins was locked up, to the best of my knowledge, he never was outside the sight of any Vigo County employees. The first part of the day he was with myself, Robert, and Jerry. After lunch he was with Bud Montgomery part of the time and Jimmy Pierce part of the time.

Id. This statement was expressly considered by the DHO. Id. at 4.

Additionally, the DHO specifically relied on the written statement of M. Anderson,

6

Senior Officer Specialist. Anderson reportedly assisted in the search of Perkins on January 26, 2011 and located the tobacco hidden in the sleeves of Perkins' government-issued jacket. Id. at 3. Anderson's report, coupled with Officer Ballinger's, the other officer who participated in the pat-down search, were "more credible and believable" than Perkins' own statements as their observations "were made strictly in the performance of their duties and they have no reason to make up false accusations." Id. at 4.

While the DHO ultimately dropped the charge of damaging government property, the greater weight of the evidence warranted a finding that Perkins committed the prohibited act of Possession of Anything not Authorized, namely tobacco. Id. Accordingly, the DHO sanctioned Perkins with 30 days loss of commissary, telephone, and visitation privileges, but gave him credit for time served. Id. The DHO also reduced the total good conduct time loss from 53 days to 40 days (27 days for the phone violation and 13 days for possessing tobacco). Id.; (ECF No. 10-1 at 9). The DHO explained that "[t]he action/behavior on the part of any inmate to have possession of anything which is not authorized interferes with the staff's ability to account for all inmate property and perform proper shakedowns of the inmate's assigned area." (ECF No. 10-14 at 5). The imposed sanctions were intended to serve as deterrence from similar misconduct. Id.

Petitioner subsequently appealed the DHO's decision in the re-hearing. (ECF No. 10-12 at 3). His appeal was rejected because he filed at the wrong level. Id. Apparently, Perkins should have filed with the Regional Director as opposed to the warden of the institution. (ECF No. 10-1 at 8). Petitioner was given the opportunity to re-file at the appropriate level, which he then did. His re-filing was denied. Id. No further appeals to the BOP's Central Office were made. Id. Perkins also filed a concurrent appeal with the Regional Director on December 23,

2012. Id.; (ECF No. 10-13).  That appeal was also denied, and no further appeals were taken. Id.

On March 4, 2013, Perkins, proceeding pro se, filed the present habeas petition pursuant to 28 U.S.C. § 2241 alleging constitutional error with the administrative action taken by the BOP.   Primarily, Petitioner claims he has exhausted all administrative remedies "as best possible" and he was deprived of his constitutional due process rights when the DHO denied his right to have certain witnesses present at the disciplinary hearing held on March 14, 2011.[3]  (ECF No. 1 at 4).

Respondent filed a Rule 5 Answer and Motion to Dismiss or in the alternative for Summary Judgment, along with a brief in support.  (ECF Nos. 9, 10).  In accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(K), Perkins was advised of his right to file opposing affidavits, statements, exhibits, and legal memoranda, as well as possible consequences for failing to oppose Respondent's filing.  (ECF No. 11).   Perkins responded on September 30, 2013, and Respondent's Motion for Summary Judgment is now ripe for judicial review.

## II.    RECOMMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.    Exhaustion

Federal prisoners must first exhaust all administrative remedies prior to filing § 2241 petitions. McClung v. Shearin, 90 F. App'x 444, 445 (4th Cir. 2004) (citing Carmona v. United States Bureau of Prisons, 243 F.3d 629, 634 (2d Cir. 2001)).  To "give the agency a fair and full

---

[3] Perkins also claims the lapse of time between the original March 14, 2011 DHO Hearing, the August 12, 2011 remand, and the August 14, 2012 re-hearing prejudiced him by rendering his witnesses unavailable, but offers no proof as to the accuracy of his contention.  Rather, he claims, without offering any evidence in support, that "[t]hese witnesses were still available to my understanding up until January, February of 2012." (ECF No.13 at 6). Moreover, according to the Court's review, it does not appear that an inordinate amount of time transpired between the date of the original hearing, the remand, and that of the re-hearing, particularly in light of Perkins' numerous filings through the Administrative Remedy Program, as well as the disciplinary context in which this occurred.

opportunity to adjudicate their claims," proper exhaustion requires compliance with all of an agency's procedural requirements. Woodford v. Ngo, 548 U.S. 81, 90 (2006). An inmate's failure to properly exhaust administrative remedies prior to filing a habeas petition will render the claims procedurally defaulted. McClung, 90 F. App'x at 446. Failure to exhaust is only excusable upon a showing of cause and prejudice. Id. at 445.

Within the BOP, administrative remedies are exhausted through the Administrative Remedy Program set forth in 28 C.F.R. §§ 542.10-19. The Program's purpose "is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10. Pursuant to this process, an inmate is first required to present the concern informally to staff, "and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." Id. at § 542.13. Should informal resolution fail, the inmate may file a formal written Administrative Remedy Request with the institution within twenty days following the date on which the basis for the Request occurred. Id. at § 542.14(a). An inmate dissatisfied with the warden's response may then submit an appeal to the appropriate Regional Director within twenty days of the date of the warden's response. Id. at § 542.15(a). If the inmate remains dissatisfied with the Regional Director's response, he may submit an appeal to the General Counsel within thirty days of the response. Id. While the various time limits may be extended in proper circumstances, an appeal to the General Counsel is the final administrative remedy. Id.

Here, it is evident that Petitioner was aware of the Administrative Remedy Program outlined above. Indeed, he has reportedly filed twenty-one requests through the Program, fifteen of which related to two Incident Reports underlying this action. (ECF No. 10-1 at 7). While many of those requests were rejected due to procedural errors, there appears to be no dispute that

Perkins has exhausted all administrative remedies regarding the phone abuse violation contained in Incident Report Number 2117275. Id. This, however, is not the case with the tobacco violation in Incident Report Number 2117271.

As explained above, Perkins appealed the DHO's findings related to both the tobacco and jacket violations to the BOP's Northeast Regional Director on August 12, 2011. Id. at 7-8. This appeal was granted in part and remanded in part to the DHO for a re-hearing. Id. at 8. At the re-hearing, the DHO dismissed the destruction of property violation under Code 329. Perkins then filed another appeal with the warden of the institution. This was error, as Perkins should have filed his appeal with the Regional Director. Id. His defective appeal was rejected and he was given the chance to re-file at the appropriate level, which he did. This appeal was denied and Perkins failed to submit any further appeal to the General Counsel – the proper last step in the administrative review process. Id. Perkins also submitted a separate appeal related to the DHO re-hearing with the Regional Director. That, too, was denied and Perkins made no further appeal. Id.

For his part, Perkins contends he has exhausted his administrative remedies "as best possible," and further attempts at exhaustion would have been futile as he was "challenging the [BOP's] application of [BOP] policies upon [himself]." (ECF No. 1 at 2). The Respondent, he claims, has been notified and has "therefore been appr[a]ised of the situation." Id. Notice alone, however, does not suffice to establish proper exhaustion. See Mallory v. Smith, 27 F.3d 991, 995 (4th Cir. 1994) (citing Keeny v. Tamayo-Reyes, 504 U.S. 1, 10 (1992)). Further, while proper exhaustion may be waived if administrative exhaustion would be futile, see, e.g., Phelps v. Hadden, 27 F.3d 563, at *1 (4th Cir. 1994) (unpublished), Perkins has proffered no evidence in support of his futility claim beyond his conclusory statement. Finally, he has not

demonstrated, or attempted to demonstrate, any cause or prejudice to excuse his failure to abide by the Administrative Remedy Program.

Because Perkins failed to appeal his concerns regarding Incident Report Number 2117271 to the General Counsel absent any delineated cause or prejudice, despite having previously navigated the appeals process in its entirety, the undersigned finds the administrative process was not properly exhausted. For this reason, the petition, as it relates to Incident Report Number 2117271 is procedurally barred from review in this Court. See McKart v. United States, 395 U.S. 185, 193-95 (1969). However, as the case has progressed to this stage, and Petitioner's claims lack merit, the Court will address Petitioner's claims to both violations on their merits. See Bacon v. Lee, 225 F.3d 470, 477 (4th Cir. 2000).

**B.      Due Process Claims**

There is no doubt that prisoners may claim the protections of the Due Process Clause. See Wolff v. McDonnell, 418 U.S. 539, 555 (1974). However, "the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." Id. To the contrary, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Id. As the Supreme Court has explained:

> The requirements of due process are flexible and depend on a balancing of the interests affected by the relevant government action. Where a prisoner has a liberty interest in good time credits, the loss of such credits threatens his prospective freedom from confinement by extending the length of imprisonment. Thus, the inmate has a strong interest in assuring that the loss of good time credits is not imposed arbitrarily. This interest, however, must be accommodated in the distinctive setting of a prison, where disciplinary proceedings "take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so." Consequently, in identifying the safeguards required by due process, the Court has recognized the legitimate institutional needs of

11

assuring the safety of inmates and prisoners, avoiding burdensome administrative remedies that might be susceptible to manipulation, and preserving the disciplinary process as a means of rehabilitation.

Superintendent, Massachusetts Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985) (citations omitted).

Accordingly, in Wolff v. McDonnell, 418 U.S. 539 (1974), the Supreme Court considered how prison disciplinary hearings must be structured to ensure they comport with the requirements of the Due Process Clause: (1) written notice of the disciplinary charges must be provided to the defendant at least 24 hours in advance of the disciplinary hearing; (2) a neutral and detached hearing body; (3) the opportunity to call witnesses and present documentary evidence; (4) an opportunity for non-attorney representation if the inmate is illiterate or the disciplinary hearing is complex; and (5) a written statement provided by the fact finder(s) outlining the evidence relied upon and the reasons for the chosen course of disciplinary action. Wolff, 418 U.S. at 563-67; see also Crawley v. Wilson, No. 2:11CV542, 2012 WL 2505118, at *4 (E.D. Va. May 16, 2012).

Each of these requirements was met in Perkins' case. He was given notice of the charges against him on January 27, 2011, five days before the UDC hearing on Incident Report Number 2117271, and approximately one-and-a-half months prior to the DHO hearing on both Reports. (ECF No. 10-1 at 3-5). On March 14, 2011, Perkins attended the DHO hearing with his staff representative, but submitted no evidence and called no witnesses to support his position with regard to the phone abuse violation. Id. at 5. Though he submitted no documentary evidence to support his position regarding the tobacco and jacket violations, he did request the testimony of another inmate and two park employees. The DHO determined the nature of this testimony would be irrelevant to the question at issue and denied the request. Id. at 6. Perkins was given a

written statement of the DHO's findings, explaining the decisions and reasons for the chosen sanctions. Lastly, Perkins has not disputed the neutrality of the DHO.[4]

Perkins argues he was denied the right to have his witnesses present and called upon during his initial disciplinary hearing. (ECF No. 1 at 4). These witnesses were important, he claims, because the issues comprising both Incident Reports center around the tobacco found in his coat. Id. at 9. Perkins vehemently denies knowledge of the tobacco and asserts his witnesses would have proven this point. He argues the tobacco found in his jacket contributed to all three violations and that denying his right to call witnesses denied him due process.

An inmate's right to witness testimony during a disciplinary hearing, however, is not guaranteed. "An inmate facing disciplinary proceedings has the *qualified* right 'to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.'" Brown v. Braxton, 373 F.3d 501, 505 (4th Cir. 2004) (quoting Wolff v. McDonnell, 418 U.S. 539, 566 (1974)) (emphasis added). The right is qualified because, as the Supreme Court announced, "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." Wolff, 418 U.S. at 566. Accordingly, Wolff "clearly established that prison officials [have] the discretion to deny witness requests, where legitimate penological interests [justify] excluding a witness." Brown, 373 F.3d at 505.

Moreover, the Supreme Court has repeatedly asserted that while the right to present

---

[4] Perkins has alleged that at the initial DHO Hearing, "it was clear that [the DHO] already had his mind made up about the situation" but he failed to even speculate that the decision resulted from anything other than the facts presented in the report and at the hearing. (ECF No. 1 at 7). While Perkins argues the DHO assumed certain facts in reaching his decision, these statements are conclusory in nature and are not supported by the facts submitted in support of summary judgment.

evidence is ordinarily basic to a fair hearing, "the inmate's right to present witnesses is necessarily circumscribed by the penological need to provide swift discipline in individual cases." Ponte v. Real, 471 U.S. 491, 495 (1985) (citing Wolff v. McDonnell, 418 U.S 539 (1974); Baxter v. Palmigiano, 425 U.S. 308 (1976)). Indeed, the right to call witnesses is "circumscribed by the necessary 'mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application.'" Baxter, 425 U.S. at 321 (quoting Wolff, 418 U.S. at 556). Additionally, prison officials are not required to explain their rationale for excluding certain witness testimony for the benefit of the administrative record. See Ponte, 471 U.S. at 497 ("[T]he prison officials may choose to explain their decision at the hearing, or they may choose to explain it 'later.'"). So long as the reasons are "logically related to preventing undue hazards to 'institutional safety or correctional goals,' however, the explanation should meet the due process requirements as outlined in Wolff." Id.

Here, the DHO presiding over Perkins' initial DHO Hearing clearly explained the rationale for excluding Perkins' witnesses. Specifically, he clarified that the particular violation found was possession of tobacco. Based on the uncontested evidence, tobacco was located on Perkins' body. Because of this fact, and because "[i]t would have been highly unlikely for the park service employees to have had [Perkins] under constant direct supervision all day of the incident," Perkins' requested witnesses were deemed irrelevant for purposes of the Hearing. (ECF No. 10-9 at 2).

Notwithstanding this, Perkins had a second opportunity to present his witnesses during the re-hearing following his appeal. During that re-hearing, the presiding DHO considered a written statement from Inmate Lippincourt, one of Perkins' witnesses. (ECF No. 10-1 at 9). Perkins' previous representative also attempted to contact the park employees who were no

14

longer employed at the park. Discussions with the Vigo County Parks and Recreation Superintendent and ensuing searches of local and online phone books proved fruitless. (ECF No. 10-14 at 2). After considering the evidence, including Inmate Lippincourt's statement, the DHO assigned greater weight to the staff members' statements and documentary and physical evidence than to Perkins' claimed lack of knowledge or the testimony of Inmate Lippincourt. Nonetheless, the DHO did elect to drop the charge of damaging government property relating to the altered jacket. Id. Because the DHO presiding over Perkins' initial DHO Hearing articulated on the record reasons "logically related" to the institutional goal of providing "swift discipline," and because, in any event, it seems efforts were made to contact the previously excluded witnesses who could not be located before Perkins' re-hearing, the undersigned finds Perkins was not denied due process in the implementation of lost good conduct time for the tobacco recovered from his jacket sleeves.

## III.   RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Respondent's Motion for Summary Judgment be GRANTED and that Perkins' petition for a writ of habeas corpus under 28 U.S.C. § 2241 be DENIED and the case DISMISSED with prejudice. Additionally, to the extent Perkins is seeking further mandamus relief for the initially misdirected $5.00 filing fee, the undersigned recommends denial.

## IV.   REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.     Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendation within fourteen (14) days from the date

of mailing of this Report to the objecting party, 28 U.S.C. §636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.   A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2.    A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of the right to appeal from a judgment of this Court based on such findings and recommendations.  Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk shall mail a copy of this Order to the petitioner and to counsel of record for the respondent.

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
January 14, 2014.

### Clerk's Mailing Certificate

A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

Dana Perkins
#14059-026
Petersburg 1000
Federal Correctional Institution
Inmate Mail/Parcels
P.O. Box 1000
Petersburg, VA 23804


Virginia Lynn Van Valkenburg
United States Attorney Office
101 W Main St., Suite 8000
Norfolk, VA 23510

Fernando Galindo, Clerk

By_____
        Deputy Clerk

_____, 2014